UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RAYMOND WILLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-CV-7-PLR-CCS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the District Court's Order [Doc. 18] remanding the case to the undersigned for the limited purpose of reconsidering treatment records from Sam Kabbani, M.D., in determining whether the Administrative Law Judge ("the ALJ") properly evaluated the Plaintiff's peripheral neuropathy at step two of the sequential evaluation, as well as the impairment's effect on the Plaintiff's residual functional assessment ("RFC"), as it relates to the Plaintiff's application for supplemental security income ("SSI").

I. **PROCEDURAL PROSTURE**

This case came before the Court for judicial review of the decision of the ALJ, the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). After the parties filed competing dispositive motions, the undersigned entered a Report and Recommendation [Doc. 16] on February 11, 2016, recommending that the Plaintiff's Motion for Summary Judgment [Doc. 11] be denied, and the Commissioner's Motion for Summary Judgment [Doc. 14] be granted. The Court found that the ALJ had not erred in

considering: (1) the severity of the Plaintiff's peripheral neuropathy, (2) various treatment records and opinions from several medical sources that treated the Plaintiff, (3) the Plaintiff's work history and alcohol and drug use in assessing the Plaintiff's credibility, and (4) medical opinions from non-examining state agency physicians.

On February 19, 2016, the Plaintiff filed an objection to the Report and Recommendation with regard to the Court's finding that the ALJ had properly adjudicated the severity of the Plaintiff's peripheral neuropathy and had properly considered treatment records from physician assistant Nathan Slayer. [Doc. 17]. As to the Plaintiff's peripheral neuropathy, the Court concluded that treatment records from Sam Kabbani, M.D., who began treating the Plaintiff's impairment in March 2012, failed to establish more that the impairment presented more than a slight abnormality prior to the Plaintiff's insured status expiring on December 31, 2010. While the Plaintiff agreed with the Court's conclusion that Dr. Kabbani's treatment records were therefore irrelevant as to his application for disability insurance benefits because they did not evidence the condition of the Plaintiff's impairment prior to the expiration of his insured status, the Plaintiff argued that the treatment records remained relevant as to his application for SSI because there is no insured status requirement for SSI claims. As to Mr. Slayer, the Court found that the ALJ properly evaluated the physician assistant's treatment records in forming the Plaintiff's RFC. The Plaintiff objected, arguing that the ALJ failed to adequately address the combined effect of the Plaintiff's impairments in light of the Mr. Slayer's treatment records.

On March 28, 2016, the District Court entered an Order [Doc. 18] addressing the Plaintiff's objections. The District Court found that Dr. Kabbani's "treatment notes are relevant to the plaintiff's application for SSI because there is no 'insured status' requirement for SSI claims." [Id. at 1-2]. The District Court therefore sustained the Plaintiff's objection that the

2

undersigned had erred by failing to consider Dr. Kabbani's treatment records with respect to the Plaintiff's SSI application. The District Court, however, overruled the Plaintiff's objection as to Mr. Slayer, concluding that the ALJ had properly evaluated Mr. Slayer's findings.

Accordingly, the District Court ordered that this case be referred back to the undersigned for the limited purpose of "addressing the plaintiff's peripheral neuropathy argument relating to his SSI application." [Id. at 3].

**II.  STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4

3

(6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## III. ANALYSIS

The Plaintiff alleges that Dr. Kabbani's treatment records demonstrate that his peripheral neuropathy is a severe impairment that had a greater effect upon his RFC than that found by the ALJ. [Doc. 12 at 5-6]. As instructed by the District Court, this Court reviews Dr. Kabbani's treatment records to determine whether the ALJ erred at step two in finding that the Plaintiff's impairment was nonsevere, and whether the ALJ properly considered the impairment's impact on the Plaintiff's RFC. Moreover, the Court's review is limited to the Plaintiff's application for SSI.

4

The Plaintiff began treatment with Dr. Kabbani in March 2012 at which time the Plaintiff complained of constant numbness and tingling in his extremities, including that his left leg "goes out," causing him to fall. [Tr. 732]. Upon examination, the Plaintiff experienced deceased sensation to all modalities, left leg muscle wasting, unsteady gait, and normal range of motion. [Tr. 733]. An EMG and nerve conduction test was positive for mild peripheral polyneuropathy of the bilateral extremities. [Id., Tr. 739-42]. Dr. Kabbani diagnosed the Plaintiff with "unspecified hereditary and idiopathic peripheral neuropathy" and prescribed the medication Gabapentin. [Tr. 733]. During a follow-up appointment in May 2012, the Plaintiff reported that Gabapentin "helps some," and his medication was increased. [Tr. 730-31]. The Plaintiff reported in June 2012 that his medication helped him experience symptoms with less frequency, but that when his symptoms were present they were intensified. [Tr. 736]. Over the next several months, the Plaintiff continued to complain of tingling in his extremities and reported an increase of his symptoms, including that he was falling two to three time per week as a result of his left leg giving way. [Tr. 726-29, 735]. In response, Dr. Kabbani prescribed Diclofenac Sodium in August 2012 [Tr. 729], but the Plaintiff reported the following month that he had not started the medication [Tr. 727]. When the Plaintiff returned to see Dr. Kabbani six months later in March 2013, he complained that "everything is getting worse." [Tr. 893]. Treatment records do not elaborate on the Plaintiff's condition or symptoms but note that the Plaintiff reported Diclofenac Sodium was not helping his pain and that he continued a second medication for convulsions, a condition Dr. Kabbani had also been treating in addition to the Plaintiff's peripheral neuropathy. [Id.].

At step two of the disability determination, the ALJ observed that the Plaintiff was diagnosed with hereditary and idiopathic peripheral neuropathy. [Tr. 544]. Citing Dr. Kabbani's

5

treatment notes from March through September 2012, the ALJ found that the impairment was nonsevere because it did "not cause more than a minimal physical limitation beyond the limitation caused by other severe impairments of record." [Id.]. During the RFC portion of the ALJ's decision, the ALJ summarized the Plaintiff's treatment with Dr. Kabbani, noting that a nerve test showed mild peripheral polyneuropathy and that a follow-up visit in May 2012 demonstrated that Gabapentin "somewhat" helped the Plaintiff's symptoms. [Tr. 548]. The ALJ also observed that although the Plaintiff complained in March 2013 that his symptoms had worsened, Dr. Kabbani noted that upon examination, the Plaintiff was in no acute distress. [Id.].

At step two, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88 (6th Cir. 1985). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 415.920(c). Step two has been described as "a *de minimis* hurdle" in that an impairment will be considered nonsevere "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." Higgs v. Brown, 880 F.2d 860, 862 (6th Cir. 1988) (citing Farris, 773 F.2d at 90).

"[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps." McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. Oct. 31, 2008) (citing Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. Feb. 22, 2008)). Accordingly, as long as the ALJ finds some impairments to be severe and continues the sequential evaluation process, it is "legally irrelevant" that other impairments are determined to be nonsevere, because "the ALJ must consider both severe and nonsevere impairments in the subsequent steps." McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516,

6

522 (6th Cir. 2008) (citation omitted); see 20 C.F.R. § 415.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.").

Here, the Court finds that substantial evidence does not support the ALJ's step two finding that the Plaintiff's peripheral neuropathy is nonsevere. Dr. Kabbani's treatment records suggest that the Plaintiff's impairment passes the *de minimum* standard set forth in Higgs. Specifically, the Plaintiff's complaints of tingling and numbness in his extremities, in addition to reports of falling, is consistent with Dr. Kabbani's March 2012 examination findings demonstrating decrease in sensation and left leg weakness. Although the nerve conduction test only showed mild peripheral neuropathy and medication offered some relief, the Court finds that the Plaintiff's reported symptoms and Dr. Kabbani's examination findings present more than a slight abnormality that satisfies the "lenient interpretation of the severity requirement." Higgs, 880 F.2d at 862.

The Court also finds, however, that the ALJ's error at step two was harmless because he considered the effect of the Plaintiff's peripheral neuropathy at subsequent steps of the sequential evaluation. The ALJ specifically considered Dr. Kabbani's treatment records in shaping the Plaintiff's RFC. [Tr. 548]. Therefore, it is inconsequential that the ALJ found the Plaintiff's peripheral neuropathy nonsevere at step two.

The Plaintiff contends, however, that the ALJ's refusal to recognize the Plaintiff's peripheral neuropathy as a severe impairment led the ALJ to improperly determine the functional effect of the impairment. [Doc. 12 at 6]. In this regard, the Plaintiff argues that the ALJ's RFC finding that the Plaintiff can perform frequent bilateral handling and fingering, as well as stand

7

and walk for four hours in an eight-hour workday, is contrary to the Plaintiff's testimony and Dr. Kabbani's treatment records. [Id.].

The Commissioner counters that the Plaintiff's peripheral neuropathy does not impose functional limitations beyond those incorporated in the Plaintiff's RFC. [Doc. 15 at 6]. The Commissioner points to the Plaintiff's testimony in which he stated that he never actually received a clear diagnosis of neuropathy. [Id. at 5]. In addition, the Commissioner argues that the nerve conduction test performed by Dr. Kabbani only showed "mild" peripheral neuropathy, that the Plaintiff was not entirely compliant with treatment, and that when the Plaintiff returned in March 2013 after a six month gap in treatment, Dr. Kabbani noted that the Plaintiff was in no acute distress despite the Plaintiff's report that he felt worse. [Doc. 15 at 5-6].

The Court finds that substantial evidence supports the ALJ's RFC determination. Although the Plaintiff argues that Dr. Kabbani's treatment notes demonstrate that he continued to experience symptoms that were not effectively controlled by his medication, there is some question as to medication compliance. After the Plaintiff complained in August 2012 that Gabapentin no longer offered relief, Dr. Kabbani prescribed Diclofenac Sodium. During the Plaintiff's follow-up appointment in September 2012, at which time the Plaintiff relayed that he continued to experience numbness in his extremities, treatment notes reflect that the Plaintiff was not taking any of the medication Dr. Kabbani had prescribed. [Tr. 726]. When the Plaintiff returned in March 2013 complaining that Diclofenac Sodium was not helpful, pharmacy records do not reflect that the medication was ever filled. [Tr. 926].

The Plaintiff additionally relies on his hearing testimony to substantiate that his peripheral neuropathy had a greater impact on his RFC and is consistent with complaints noted in Dr. Kabbani's treatment records. [Doc. 12 at 6]. Specifically, the Plaintiff testified that he

8

experiences numbness in his hands which causes him to frequently drop things and that he is limited to how long he can walk before he needs to sit down and take a break. [Id.]. The ALJ, however, found that the Plaintiff's reported activities of daily living undermined the Plaintiff's subjective allegations, [Tr. 551], a finding unchallenged by the Plaintiff. The ALJ observed that the Plaintiff can still drive, shop with his daughter, prepare simple meals, clean the kitchen, fix simple things around the house, watch television, read, listen to music, interact with his dog, and care for his grandson all day long. [Id.]. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the . . . claimant's testimony . . . ." Walters, 127 F.3d 525, 531 (6th Cir. 1997); see 20 C.F.R. § 415.929(c)(4)(i) (explaining that a claimant's ability to perform daily activates is a factor that may be considered in assessing a claimant's subjective complaints of pain).

Finally, the Court notes that at no time in the course of treatment with Dr. Kabbani were any functional limitations assessed. Even when the Plaintiff complained during his last appointment of record in March 2013 that "everything was getting worse," Dr. Kabbani did not make any examination findings beyond observing that the Plaintiff appeared in no acute distress, as noted by the ALJ, and no further treatment recommendations or assessment was made by Dr. Kabbani in response to the Plaintiff's peripheral neuropathy.

Accordingly, the Court finds that although the ALJ erred at step two, the error was harmless because the ALJ properly considered the functional impact of the Plaintiff's peripheral neuropathy at subsequent steps of the sequential evaluation, and Dr. Kabbani's treatment notes fail to substantiate greater limitations beyond those accounted for by the ALJ's RFC determination.

9

Case 3:15-cv-00007-PLR-CCS   Document 19   Filed 08/22/16   Page 9 of 10   PageID #: 1166

## IV. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion for Summary Judgment [**Doc. 11**] be **DENIED** and the Commissioner's Motion for Summary Judgment [**Doc. 14**] be **GRANTED** with respect to "the plaintiff's peripheral neuropathy argument related to his SSI application." All other issues raised in the Plaintiff's Motion for Summary Judgment have already been ruled on by the Court's February 11, 2016 Report and Recommendation [Doc. 16], and are therefore not pending before the undersigned.

Respectfully submitted,

_____s/ C. Clifford Shirley, Jr._____
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).